PD-0740-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/14/2015 7:08:06 PM
Accepted 7/16/2015 5:05:19 PM
ABEL ACOSTA
CLERK

**CAUSE NO. PD-0740-15**

_____

IN THE COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

_____

THE STATE OF TEXAS

*Respondent/ Appellant*

v.

VANDA VIGIL

*Petitioner/ Appellee*

_____

FROM THE COUNTY COURT AT LAW NUMBER SEVEN
TRIAL COURT NO. 20120C10835

THE COURT OF APPEALS EIGHTH DISTRICT OF TEXAS
NO. 08-13-00273-CR

_____

**PETITION FOR DISCRETIONARY REVIEW**

_____

WILLIAM W. NAVIDOMSKIS
Counsel for Petitioner,Vanda Vigil
701 St. Vrain
El Paso, Texas 79902
Tel: (915) 730-8644
Fax: (915) 975-8028
SBN 24053384

defense@weslawyer.com

FILED IN
COURT OF CRIMINAL APPEALS

July 16, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

**PETITIONER:** Vanda Vigil, represented in Trial and on Appeal by:

William W. Navidomskis
711 Myrtle Street
El Paso, Texas 79901

**RESPONDENT:** The State of Texas represented Appeal by:

Jaime Esparza, District Attorney
Ronald Banerji, Assistant District Attorney
500 E. San Antonio
El Paso, Texas 79901

Trial Counsel:

Jaime Esparza, District Attorney
Alejandro Cuellar, Assistant District Attorney
Sarah Rogness, Assistant District Attorney
Patrick Sloan, Assistant District Attorney
500 E. San Antonio
El Paso, Texas 79901

**TRIAL COURT:** County Court at Law Number Seven, El Paso, Texas, the Honorable Tom Spieczny, Presiding.

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES, AND COUNSEL.............................................i

TABLE OF CONTENTS.......................................................................ii, iii

INDEX OF AUTHORITIES.................................................................iv, v

STATEMENT REGARDING ORAL ARGUMENT.................................................1

STATEMENT OF THE CASE AND..................................................................1

STATEMENT OF PROCEDURAL HISTORY.......................................................1

GROUNDS PRESENTED.........................................................................2

ARGUMENT....................................................................................3

1.    The court of appeals' ruling that the evidence supporting a conviction is legally sufficient whenever the trier of fact believes the testimony of the victim alone conflicts with decisions of the United States Supreme Court..........................3

2.    By treating the legal sufficiency test of whether "any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt" as established whenever the victim's testimony alone is believed by the trier of fact, the court of appeals has decided a case which conflicts with decisions of the United States Supreme Court and with decisions of this Court...........6

3.    The court of appeals' decision to vacate the trial court's order granting a new trial on legal insufficiency grounds when there were no eyewitnesses connecting Petitioner Vigil to the assault and the State confessed error on this point conflicts with applicable decisions of this Court ...................................9

4.    The court of appeals' ruling that a reviewing court can "infer" that a defendant is a primary actor in an assault case involving multiple assailants without identifying the specific conduct the defendant engaged in conflicts with applicable decisions of this Court ...............................................................11

5.    The court of appeals' determination that the manner and means paragraphs alleged in a charging instrument which are descriptive of an essential element of the charged offense are mere surplusage conflicts with applicable decisions of this Court..................................................................................................14

6.    The court of appeals departed from the *Jackson v. Virginia* legal sufficiency test by measuring the sufficiency of the evidence against a charge which was hypothetically incorrect because it failed to considering the manner and means allegations of the charging instrument ..........................................................16

7.    The court of appeals' treatment of the manner and means paragraphs of a charging instrument as mere surplusage conflicts with decisions of the U.S. Supreme Court which require a charging instrument to provide a defendant with fair and adequate notice of the offense charged........................................18

PRAYER...................................................................................................................19

CERTIFICATE OF COMPLIANCE.......................................................................21

CERTIFICATE OF SERVICE................................................................................21

APPENDIX..............................................................................................................22

# INDEX OF AUTHORITIES

**FEDERAL CASES**                                                                           **PAGES**

*Hamling v. United States*, 418 U.S. 87, 117 (1974).................................................19

*Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979)......................4, 5, 6, 7, 8, 9, 16

*McKoy v. North Carolina*, 494 U.S. 433, 449 (1990).........................................18

*Schad v. Arizona*, 501 U.S. 634 (1991) (plurality opinion)....................................18

**STATE CASES**

*Adames v. State*, 353 S.W.3d 854 (Tex. Crim. App. 2011)....................................17

*Durham v. State*, 16 S.W.2d 1092, 1095 (Tex. Crim. App. 1929)..........................13

*Gomez v. State*, No. 08-10-00276-CR, 2012 WL 390970 at *8)....................7, 8

*Hall v. State*, 225 S.W.3d 524, 536 (Tex.Crim.App.2007)......................................15

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim. App.2007)........................................7

*Isassi v. State*, 330 S.W.3d 633, at 638 (Tex.Crim. App. 2010)...............................5

*Jefferson v. State*, 189 S.W.3d 305 (Tex.Crim.App. 2006)....................................18

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex.Crim.App. 2011)....................................6

*Malik v. State*, 956 S.W.2d 234 (Tex.Crim.App. 1997)....................................16, 17

*McCuin v. State*, 505 S.W.2d 827, 830 (Tex. Crim. App. 1974).............................13

*Ransom v. State*, 920 S.W.2d 288, 301-302(Tex. Crim. App. 1994).......................12

*Saldano v. State*, 70 S.W.3d 873, 884 (Tex.Crim.App. 2002)..................................11

*Sanchez v. State*, 376 S.W.3d 767, 772 (2012)........................................................16

*Schmidt v. State*, 278 S.W.3d 353 (Tex.Crim.App. 2009).......................................15

*Stuhler v. State*, 218 S.W.3d 706 (Tex. Crim. App. 2007)......................................18

*Williams v. State*, 235 SW 3d 742 (Tex. Crim.App. 2007)........................................7

**STATEMENT REGARDING ORAL ARGUMENT**

Petitioner, Vanda Vigil, hereby waives oral argument.

**STATEMENT OF THE CASE**

This petition concerns the decision of the court of appeals to vacate and set aside a trial court's order granting a new trial after the Petitioner, Vanda Vigil, was convicted of the criminal offense of Class "A" assault. Vigil based her motion for new trial in part on allegations that the evidence was legal insufficienct to support the verdict. After conducting a hearing on Petitioner's motion for new trial and hearing argument from both the State and Defense, the trial court granted Vanda Vigil's motion for new trial.

**STATEMENT OF PROCEDURAL HISTORY**

1. The court of appeals handed down its opinion on May 15, 2015.

2. No motion for rehearing was filed.

## QUESTIONS PRESENTED FOR REVIEW

1.      Did the court of appeals err in holding that it is well-established rule or test of legal sufficiency that the victim's testimony alone, if believed, is legally sufficient to support a conviction?

2.      Did the court of appeals err in treating the *Jackson v. Virginia* legal sufficiency test of whether "any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt" as established whenever the victim's testimony is believed by trier of fact?

3.      Was it proper for the court of appeals to disregard the trial court's order granting a new trial on legal insufficiency grounds when there were no eyewitnesses connecting Petitioner Vigil to the alleged assault, especially since the State confessed error on this point?

4.      Was it error for court of appeals to rule that a reviewing court can "infer" that a defendant was a primary actor in any assault involving multiple assailants without identifying the specific conduct which was engaged in by that defendant?

5.      Did the court of appeals err by treating the manner and means paragraphs alleged in the charging instrument as mere surplusage, when these allegations were descriptive of an essential element of the charged offense?

6.      Did the court of appeals depart from the *Jackson v. Virginia* legal sufficiency test by measuring the sufficiency of the evidence against a charge which was hypothetically incorrect because it failed to take into consideration the manner and means allegations of the charging instrument?

7.      Can a court of appeals treat the manner and means paragraphs set out in a charging instrument as mere surplusage when decisions of the U.S. Supreme Court which require a charging instrument provide a defendant with fair and adequate notice of the offense charged?

# ARGUMENT

**1.    The court of appeals' ruling that the evidence supporting a conviction is legally sufficient whenever the trier of fact believes the testimony of the victim alone conflicts with decisions of the United States Supreme Court**

Petitioner, Vanda Vigil, was convicted after a jury trial for Class "A" assault. The complaining witness, Elizabeth Jimenez, testified that she was attempting to exit Coconut's Bar when she was attacked from behind by Petitioner Vigil and Vigil's daughter, Alexis Gonzalez. *RR 3, 10.* Jimenez was asked by the prosecutor, "How did they attack you?" *(Id.)*, and replied:

> As I was leaving, I felt Alexis grabbing for my right breast, I guess, and she started hitting me on my head, and then Vanda got in and started pulling my hair and hitting me on the head. And that's when I fell. *RR 3,10.*

When asked, "Did you fight back at all?", Jimenez replied: "I – I wasn't even able to. I did not even see them attacking me." *Id.* Jimenez testified that right after she fell to the floor a bouncer separated her from her attackers. Jimenez' cousin, Cecilia Archuleta, was also present in Coconuts' bar. *Id.* Like Jimenez, Archuleta failed to link Vigil to the assault and commented that "It all happened so quick." *RR 3, 26-29.*

Stephanie Chavez, a defense witness, testified that she did not see Vigil pull anyone's hair, punch anyone, or engage in any violence. *RR 3, 73.* Petitioner Vigil also took the stand. She testified that she had witnessed Jimenez instigate the matter with her daughter, Alexis Gonzalez, by calling her daughter a "disgusting lesbian"

and then pushing her daughter. *RR 3, 81-82.* Vigil indicated the pushing incident between Jimenez and her daughter resulted in the two falling to the floor, at which time a bouncer intervened and separated them. *RR 3, 83*. Vigil testified that the entire incident "happened like seconds. It was literally seconds" and that she did not strike or injure Jimenez in any way, but only approached "to go help [her] daughter get up, try to separate her, or something." *RR 3, 83.*

On page 6 of its opinion, the court of appeals acknowledges Vigil's contention that the evidence was legal insufficient as to (1) the identity of Vigil as the perpetrator of the Class "A" assault offense; and (2) the causation element of this alleged offense. But on the next page of its opinion, it rejects Vigil's contention that the evidence was legally insufficient as to the identity element:

> We agree with Vigil that, from a direct evidence standpoint, the identity issue ultimately boils down to a he-said, she-said dispute turning on the testimony of a single witness: Jimenez. However, it is well-established that the victim's testimony alone, if believed, is legally sufficient to support a conviction. See *Gomez v. State*, No. 08-10-00276-CR, 2012 WL 390970, at *8 (Tex.App.–El Paso Feb. 8, 2012, no pet.) (not designated for publication).

This analysis conflicts with the analysis adopted by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979), wherein the following legal sufficiency test was created: "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." *Id.*, at 319 (emph. added). Under *Jackson*, a reviewing court is not permitted to forego review of the evidence for legal sufficiency merely because the trier of fact believed the victim of a crime. A reviewing court is obligated to determine whether any rational trier of fact could find all of the essential elements of the offense charged beyond a reasonable doubt.

The court of appeals asserts on page 7 of its opinion that it cannot act as a "thirteenth juror" and cites to case law applicable to a factual sufficiency review. (See *Isassi v. State*, 330 S.W.3d 633, at 638 (Tex.Crim. App. 2010). But this case authority is inapplicable to Vigil's case because Vigil has raised a legal sufficiency challenge to her conviction -- not a factual sufficiency challenge. Under a legal sufficiency analysis, the court of appeals should have found the evidence legally insufficient because Jimenez readily admitted that she did not observe either Vigil or the other alleged assailant strike her or injure her in any way. When asked if she had fought back after being attacked from behind, Vigil testified, "I wasn't even able to. I did not even see them attacking me." *RR 3, 10.*

There is no basis for the court of appeals' holding that if a victim's testimony is believed by the trier of fact, the legal sufficiency of evidence cannot be challenged. Under *Jackson v. Virginia*, no such requirement is imposed. The only inquiry is

whether any rational trier of fact could have found the essential elements of the

offense beyond a reasonable doubt.

**2.      By treating the legal sufficiency test of whether "any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt" as established whenever the victim's testimony alone is believed by the trier of fact, the court of appeals has decided a case which conflicts with decisions of the United States Supreme Court and with decisions of this Court**

On page 6 of its opinion the court of appeals set forth the following test for

determining whether the evidence was legally sufficient to support a conviction:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.

It then cited to *Lucio v. State*, 351 S.W.3d 878, 894 (Tex.Crim.App. 2011) and to

*Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979) as authority for this legal

sufficiency test. But on the next page of its opinion, it substituted the following legal

sufficiency test for the *Jackson* legal sufficiency test in addressing Vigil's legal

sufficiency challenge to the identity element of the assault offense charged:

"However, it is well-established that the victim's testimony alone, if believed, is

legally sufficient to support a conviction." As support for this version of the legal

sufficiency test, the court of appeals cited to its unpublished decision in *Gomez v. State*, No. 08-10-00276-CR, 2012 WL 390970 at *8).

The U.S. Supreme Court held that the test of legal sufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, at 319 (1979). In *Jackson*, the Supreme Court did not attach any significance to whether the eyewitness to an alleged offense is the alleged victim or a mere observer. Nor did it attach any significance to whether or not the trier of fact believed the alleged victim's testimony. It did not attempt to identify any type of evidence which was inherently credible or would withstand a legal sufficiency challenge. Since *Jackson* was decided, the Supreme Court has not once carved an exception to or otherwise modified the legal sufficiency test it created. The test of legal sufficiency is and remains the same.

The same is true of this Court's analysis. Based on the *Jackson* test, it has stated, "...we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 235 SW 3d 742 (Tex. Crim.App. 2007); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim. App.2007).

Although the court of appeals in this case purports to apply the legal sufficiency test the Supreme Court created in *Jackson v. Virginia*, it actually created an entirely different test. It notes that its earlier unpublished decision in *Gomez v. State*, supra, held that a crime victim's testimony alone, if believed, establishes that the evidence legally sufficient to support a conviction. But the *Gomez* case, like this case, was wrongly decided. The court of appeals' erroneously held that its test (i.e. that the victim's testimony alone, if believed, is legally sufficient to support a conviction) is the same as the *Jackson* legal sufficiency test (i.e. whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.). But it is not.

This point becomes evident when the two tests are applied to the facts of this case. Under the *Jackson v. Virginia* test, Jimenez' initial trial testimony that Vigil hit her on the head and pulled her hair cannot be reconciled with Jimenez' later testimony that she did not observe who struck her from behind. The alleged victim's testimony would be legally insufficient under *Jackson* because no rational trier of fact could find beyond a reasonable doubt that Vigil injured Jimenez. However, Jimenez' trial testimony would meet the court of appeals' legal sufficiency test since the only showing the State had to make to prove it case was that the jury believed Jimenez' testimony that Vigil attacked and hit her.

The flaw in the court of appeals' legal sufficiency test is that it is based on circular reasoning. Under its analysis, establishing that the defendant was convicted would in turn establish that the trier of fact believed the victim's testimony, which in turn would establish that the evidence was legally sufficient. In contrast, the *Jackson v. Virginia* legal sufficiency test is not based on circular reasoning, but on whether any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. Nevertheless, the court of appeals' attempts to meld its legal sufficiency test with that of the *Jackson* test by stating that "it would be rational for a jury to conclude Vigil assaulted Jimenez based on Jimenez's testimony." (See Opinion, p. 9). This attempt fails, however, since there is no aspect of the *Jackson v. Virginia* test which is based on whether the trier of fact believed the alleged victim or for that matter, the testimony of any witness. This Court should therefore reject the court of appeals' determination that "...the victim's testimony alone, if believed, is legally sufficient to support a conviction...." as a misguided legal sufficiency test.

3. **The court of appeals' decision to vacate the trial court's order granting a new trial on legal insufficiency grounds when there were no eyewitnesses connecting Petitioner Vigil to the assault and the State confessed error on this point conflicts with applicable decisions of this Court**

The court of appeals rejected the trial court's determination that the evidence was legally insufficient without giving a reason.(See opinion, pp. 4-8). It ignored the

difficulty the trial court faced in attempting to harmonize the initial testimony of Jimenez, the complaining witness, with her later testimony. Although Jimenez initially testified that Petitioner Vigil and her daughter Alexis had hit her on the head from her backside and that Vigil had pulled her hair, during further questioning Jimenez admitted that she did not see any of her attackers – her precise words being, "I did not even see them attacking me." *RR 3, 10.* This admission by Jimenez along with the fact that she was the only witness to link Vigil to the alleged assault (a point which the court of appeals concedes) tends to explain why the prosecutor confessed error and told the trial court at the motion for new trial hearing that she did not consider the evidence legally sufficient to support Vigil's conviction of Class "A" assault. The failure of Jimenez to identify a part of her body where she sustained injury or suffered bodily pain also presented legal sufficiency issue.

The court of appeals disregarded these deficiencies in the evidence, however. In particular, it overlooked Jimenez' testimony that she did not see her attackers while she was being attacked from the rear. Instead, based on the assumption that the prosecutor confessed error, it vacated the trial court's order granting Vigil a new trial. In doing so, it failed to consider the important admission by Jimenez that she did not see any of her attackers during the attack. It also ignored the rule of this Court that reviewing courts are to grant great weight to the representations of prosecutors in

confessing error. *Saldano v. State*, 70 S.W.3d 873, 884 (Tex.Crim.App. 2002).

Further, the court of appeals disregarded the rule that

> appellate courts [are to] uphold the trial court's ruling on appeal absent an "abuse of discretion." That is to say, as long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

Although Jimenez' testimony that she did not see her attackers might not be a concern to the court of appeals, it should have been a concern. Clearly, the trial court acted within a reasonable zone of disagreement by finding Jimenez' testimony of not having observed the persons who assaulted her dispositive of the legal sufficiency issue –- especially since no other eyewitness identified Vigil as participating in the assault.[1] The court of appeals therefore improperly disregarded the trial court's ruling and also failed to give respect the State's decision to confess error on this legal sufficiency point.

4. **The court of appeals' ruling that a reviewing court can "infer" that a defendant is a primary actor in an assault case involving multiple assailants without identifying the specific conduct the defendant engaged in conflicts with applicable decisions of this Court**

In the third point for review of her brief to the court of appeals, Petitioner Vigil argued that the State failed to prove up its case because it had limited its

---

[1]See page 7 of the Opinion, which states, "We agree with Vigil that, from a direct evidence standpoint, the identity issue ... turn[s] on he testimony of a single witness: Jimenez."

prosecution theory to proving that Vigil was a primary actor, rather than a party

to the offense. However, the court of appeals rejected this argument by Vigil

based on the following reasoning:

> Vigil correctly notes that the State did not charge Vigil under law of the parties, and that as such, Vigil cannot be held criminally liable for injuries caused by Alexis Gonzalez. Even so, this is not fatal. Jimenez testified that both Vigil and Gonzalez attacked her. Assuming it believed her testimony, a reasonable jury could infer that because Jimenez said both women attacked her, and because she suffered injuries, at least some of the injuries could be attributed to Vigil.

Under Texas law, the State was required to prove that the defendant was

either a primary actor or party to the Class "A" assault offense alleged. *Ransom*

*v. State*, 920 S.W.2d 288, 301-302(Tex. Crim. App. 1994). The court of appeals

agreed that Vigil could not be found guilty as a party to the offense. However, it

nonetheless concluded that Vigil was still guilty as a primary actor "because

Jimenez said both women attacked her, and because she suffered injuries, at least

some of the injuries could be attributed to Vigil." In so ruling, the court of appeals

excused the State from having to prove how Vigil injured Jimenez.

Vigil has been unable to find a single Texas case where a court has "inferred"

that a defendant, acting with one or more other persons, was found guilty as a

principal or primary actor without some evidence of how that defendant injured

the victim of the alleged crime. In *McCuin v. State*, 505 S.W.2d 827, 830 (Tex. Crim. App. 1974), this Court held that to determine whether appellant was a primary actor or was a party to the offense, the trial court first had to remove from consideration the acts and conduct of the non-defendant actor. Then, if the evidence of the conduct of the defendant then on trial would be sufficient, in and of itself, to sustain the conviction, no submission of the law of principals was required. This carried forward the rule it had previously established in *Durham v. State*, 16 S.W.2d 1092, 1095 (Tex. Crim. App. 1929) (holding "[w]hen the evidence shows that the accused on trial was a principal actor in the commission of the offense, no charge on principals would be necessary, although the proof may also disclose that in doing the criminal act another took an equal part.").

None of this caselaw has any continued validity if a defendant can be labeled a primary actor in a multiple assailant case, without the State having to specify what conduct that defendant engaged in, vis a vis the other defendant(s) involved in the offense. Under the court of appeals' analysis, there is no longer any distinction between parties and primary actors or principals since the causation element of a criminal offense can be inferred. Review should therefore be granted to establish that a defendant's "primary actor" status cannot be simply "inferred" in a criminal case involving multiple assailants.

**5.** **The court of appeals' determination that the manner and means paragraphs alleged in a charging instrument which are descriptive of an essential element of the charged offense are mere surplusage conflicts with applicable decisions of this Court**

Elizabeth Jimenez, the complaining witness, was asked only one question regarding whether she suffered pain. *RR 3, 32.* During her second redirect examination, the prosecutor asked her: "When you were attacked, did you feel pain?" *Id.* Jimenez' response to this question was, "Yes, I did." *Id.* Jimenez did not indicate where she felt pain. Nor did she identify a particular blow from Vigil which caused her to suffer pain. *Id.* Nevertheless, the court of appeals rejected her legal sufficiency challenge to the "bodily injury" element of the assault offense charged by ruling:

> Jimenez testified that Vigil hit her head and pulled her hair, and that she felt pain during the attack. This testimony is sufficient to establish that Jimenez suffered bodily injury.

The court of appeals thus ignored Vigil's argument that the evidence was legally insufficient to prove any of the manner and means allegations of the information, i.e. that Jimenez suffered pain when her hair was pulled (paragraph A); that Jimenez sustained bodily injury after being thrown or pushed to the ground (paragraph C); or that Jimenez sustained bodily injury by being hit on the head (paragraph D).[2] The

---

[2]Paragraph B of the information, which alleged that Vigil caused bodily injury to Jimenez by grabbing or squeezing Jimenez' breast, was abandoned by the State at the start of the trial.

court of appeals instead held that Jimenez' testimony that she felt pain during the alleged attack was sufficient to prove the assault offense alleged, even though no parties charge was submitted to the jury.

In *Schmidt v. State*, 278 S.W.3d 353 (Tex.Crim.App. 2009), the Court of Criminal Appeals cited to prior caselaw as establishing that where a fact alleged in an indictment or information is descriptive of an essential element of the offense, that fact is not mere surplusage and must be proven by the State as part of its burden of proof. In *Schmidt*, the State argued that the "striking" allegation was not required to be pled and is unnecessary surplusage that is "merely descriptive of an element but not statutorily required." *Id*., at 359. The Court held, however, that "The State's argument in this case that the non-statutory, manner and means allegation of 'striking' should not be considered a 'fact required' to establish the charged retaliation-by-threat offense is contrary to our decision in [ *Hall v. State*, 225 S.W.3d 524, 536 (Tex.Crim.App.2007)]. In *Hall,* the Court of Criminal Appeals considered the non-statutory, manner and means allegation of "shooting the individual with a gun" to be a "fact required" to establish the charged murder offense. *Id.* Accordingly, the Court of Criminal Appeals in *Schmidt* explained that facts which describe an element of an offense must be proven up because these facts bear upon the defendant has been given fair and adequate notice of the offense charged:

...that appellant could have been convicted of this retaliation-by-threat offense under an indictment omitting the "to-wit: striking" allegation does not necessarily make this allegation unnecessary surplusage. We note that this Court's decision in *Doyle v. State* would support a holding that a defendant's timely motion to quash such an indictment would require the State to provide the "to-wit: striking" allegation for purpose of providing adequate notice. See *Doyle v. State*, 661 S.W.2d 726, 729-31 (Tex.Cr.App. 1983)(defendant's timely motion to quash a "nonfundamentally defective" retaliation-by-threat indictment entitled the defendant to notice of "how and to whom the threat was made"). *Id.*

This Court should reject the court of appeals' determination that the State need only prove Vigil caused bodily injury and that it could ignore the manner and means allegations of the information in its legal sufficiency analysis.

**6. The court of appeals departed from the *Jackson v. Virginia* legal sufficiency test by measuring the sufficiency of the evidence against a charge which was hypothetically incorrect because it failed to considering the manner and means allegations of the charging instrument**

The Court of Criminal Appeals in *Malik v. State*, 956 S.W.2d 234 (Tex.Crim.App. 1997) altered the legal sufficiency analysis previously applied in Texas, which had been to compare the legal sufficiency of the evidence against the actual charge given to the jury. See *Sanchez v. State*, 376 S.W.3d 767, 772 (2012). In *Malik*, the Court of Criminal Appeals held that the legal sufficiency of the evidence would be determined by comparing the evidence adduced at trial against

a hypothetically correct charge. *Id.*, at 230. In *Adames v. State*, 353 S.W.3d 854 (Tex. Crim. App. 2011), the Court rejected the argument that the *Malik* sufficiency standard is a purely state law standard that is foreign to federal constitutional norms and does not apply to a constitutional evidentiary-sufficiency review. *Id.*, at 860. It noted that under *Malik* "such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, at 240.

In Vigil's case, the court of appeals did not base its analysis on the allegations contained in the four manner-and-means paragraphs of the charging instrument. It held that because Jimenez testified that both Vigil and Gonzalez attacked her, "a reasonable jury could infer that Jimenez suffered injuries, at least some of the injuries could be attributed to Vigil." It thus relied on a hypothetically incorrect charge analysis to affirm Vigil's conviction. Vigil has been unable to find a single decision from any federal court which has held that legal sufficiency to be measured against a generic offense, which fails to take into consideration the manner and means allegations of a charging instrument. Review of this point is therefore warranted.

**7. The court of appeals' treatment of the manner and means paragraphs of a charging instrument as mere surplusage conflicts with decisions of the Supreme Court which require a charging instrument to provide a defendant with fair and adequate notice of the offense charged**

While the United States Supreme Court has determined that "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict" and that an indictment can allege different manner and means of committing a crime without rendering the indictment duplicitous, it has never dispensed with or treated manner and means allegations as mere surplusage. *Schad v. Arizona*, 501 U.S. 634 (1991) (plurality opinion); *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990). The Supreme Court's analysis in *Schad* is consistent with this Court's analysis in *Jefferson v. State*, 189 S.W.3d 305 (Tex.Crim.App. 2006) and *Stuhler v. State*, 218 S.W.3d 706 (Tex. Crim. App. 2007), which likewise recognizes that manner and means allegations in an indictment are not mere surplusage. Thus, even where different jurors can agree that the offense alleged was committed by different manner and means, neither court has ever treated manner and means allegations in an indictment or information as something which can be ignored altogether.

The court of appeals went well beyond the Supreme Court's analysis of the "unanimity" issue presented in *Schad v. Arizona*, however. It treated the the

manner and means allegations of the information in Vigil's case as mere surplusage in conducting its legal sufficiency analysis. It determined that the evidence was legally sufficient to support Vigil's conviction for assault so long as the evidence proved Vigil had committed the assault offense alleged by any means. The Supreme Court has held "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

The court of appeals' analysis thus dispenses with both requirements of *Hamling*, supra, but most particularly the requirement that the charge fairly inform the defendant of the offense charged. By holding that the State need only prove a generic "assault" offense rather than the specific "assault" offense alleged in the information – it dispensed with the fair and adequate notice requirement of *Hamling v. United States*, 418 U.S. 87, 117 (1974). This Court should address whether manner and means allegations of a charging instrument which describes an offense element can be treated as mere surplusage when they provide notice of the offense charged.

## PRAYER

WHEREFORE, premises considered, Appellant Vigil respectfully requests the Court of Criminal Appeals to grant the petition for discretionary review in this case and order the parties to brief each of the issues presented for review.

Respectfully submitted,

*/s/ William W. Navidomskis*
WILLIAM W. NAVIDOMSKIS
Attorney for Appellant
701 N. St. Vrain
El Paso, Texas 79902
Tex. Bar No. 24053384
Tel. (915) 730-8644
Fax (915) 975-8028
defense@weslawyer.com

**CERTIFICATE OF COMPLIANCE WITH RULE 9.4**

This petition for discretionary review complies with the type-volume limitations of 9.4 and contains 4,370 words, excluding the parts of the petition exempted by 9.4(1); and this petition for discretionary review complies with the typeface requirements of 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Corel Word Perfect in Times New Roman, 14-point.

/s/ William W. Navidomskis
WILLIAM W. NAVIDOMSKIS

**CERTIFICATE OF SERVICE**

This is to certify that on July __, 2015, a true and correct copy of the Appellee's Brief was delivered to District Attorney Office: District Attorney Jaime Esparza, 500 E. San Antonio, El Paso, Texas 79901 in accordance with the Texas Rules of Civil Procedure.

/s/ William W. Navidomskis
WILLIAM W. NAVIDOMSKIS

# APPENDIX

**1.**     **Opinion and Judgment**

**2.**     **Information**

1.   **Opinion and Judgment**



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
|  | § | No. 08-13-00025-CR |
|  | § | Appeal from |
| EX PARTE: DANIEL ALVAREZ | § | 384th District Court |
|  | § | of El Paso County, Texas |
|  | § | (TC # 960D10169-384-1) |
|  | § |  |

## **O P I N I O N**

This is an appeal from a habeas corpus proceeding raising issues familiar to this Court. The trial court granted the Application for Writ of Habeas Corpus based on the belief that *Padilla v. Commonwealth of Kentucky*[1] applied retroactively to guilty pleas taken before *Padilla* was decided. A case from this Court supported that view at the time the Application was granted, but as noted below, subsequent decisions from the United Sates Supreme Court and Texas Court of Criminal Appeals have taken a different tact. Faced with this reality, Daniel Alvarez now falls back on a waiver argument and an alternate basis to affirm the trial court's decision. For the reasons stated below, we reverse the trial court's issuance of the Writ of Habeas Corpus.

---

[1] 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). *Padilla* requires defense counsel to advise defendants of the immigration consequences of a plea agreement if they could easily be determined from reading the federal removal statute. 559 U.S. at 368, 130 S.Ct. at 1483.

**FACTUAL SUMMARY**

Daniel Alvarez pleaded guilty to possession of more than four grams, but less than 200 grams of cocaine on June 9, 1997. He was given deferred adjudication with five years of probation, a fine, and community service. Before admitting to the offense, the trial judge admonished him that "you can be deported if you plead guilty to that offense, and you can't return to the United States legally, [and] that any application you make for citizenship will be denied." Plea paperwork also contained his acknowledgment that: "I further understand that if I am not a citizen of the United States of America a plea of guilty or nolo contendere to this offense in this cause may result in my being deported, excluded from further admission into the United States, or denied naturalization under Federal law." Alvarez entered his plea and as far as the record shows, he successfully completed the term of that supervised release.

The possession charge grew out of these facts: an undercover police officer observed Alvarez driving a 1986 Oldsmobile which pulled up alongside another car to make what appeared to be an illegal drug sale. The officer followed Alvarez and witnessed several other suspected drug transactions. The police then followed Alvarez to his residence to identify where he lived. The undercover officer watched Alvarez for several weeks and observed him engaging in what appeared to be more drug deals, always using the Oldsmobile to make deliveries.

The police arranged with the City Sanitation Department to obtain the trash from Alvarez' residence. In his rubbish, they found plastic packaging with cocaine residue. Based on what they had learned, the police obtained a search warrant for the Oldsmobile and Alvarez' residence. When the warrant was executed at the residence, the police found a plastic baggie with 7.5 grams of what was later identified as cocaine in a shirt hanging in the closet. There were other people at the house at the time of the search, including Alvarez' wife.

2

The police executed the search warrant for the Oldsmobile by stopping the vehicle while Alvarez, and another person identified as Julian Jicalan Lopez, were driving around. A search of the vehicle turned up an additional amount of cocaine found in a plastic baggie in an air conditioner vent. Alvarez was then arrested and placed in the back of a patrol car. Another baggie of cocaine was found on the floorboard of the police cruiser where Alvarez was sitting. Jicalan Lopez had no identification when he was arrested. He was taken back to his apartment which he agreed could be searched. The search turned up a large amount of cash.

Both Alvarez and Jicalan Lopez were indicted on charges stemming from the possession and suspected sale of the cocaine. Alvarez was indicted for unlawful possession of a controlled substance in the Penalty Group I (Cocaine) exceeding 4 grams but less than 200 grams.

Jicalan Lopez, whose real name is Santiago Jicalan Sanchez, hired attorney Manny Barraza to defend both him and Alvarez. Jicalan Sanchez (aka Jicalan Lopez) executed an affidavit, submitted in this proceeding, which swore that he paid Barraza $15,000 to defend him and also paid $5,000 to Barraza to arrange for a guilty plea for Alvarez. His affidavit reads in part:

> I also paid Manuel Barraza $5,000.00 to plea Sr. Daniel Alvarez guilty and to obtain probation for him. By directing Attorney Barraza to plead Sr. Daniel Alvarez Manuel Barraza guilty to the cocaine possession charge, Attorney Barraza was able to get me deported with no charges, even though I had a prior arrest record. Attorney Barraza knew I was guilty of the charge because I explained the circumstances of the arrest to him and explained to him that the cocaine which had been seized from the vehicle belonged to me. However, I made it very clear to Attorney Barraza that I did not intend to plead guilty to the cocaine possession charge and wanted the case dismissed. It was explained to him that Sr. Daniel Alvarez would take the 'fall' for the offense. Attorney Barraza agreed to this arrangement and seemed to be satisfied, since I was the person paying for Sr. Daniel Alvarez' legal defense.

> While this was taking place, I led Sr. Daniel Alvarez to believe that Attorney Barraza intended to defend him to the best of his ability, when actually, Attorney Barraza and I had already agreed to have Sr. Daniel Alvarez plead guilty to the

3

indicted charge so the charge against me could later be dismissed. Sr. Daniel Alvarez, who had no knowledge of the cocaine in the vehicle, did not know that cocaine was inside the vehicle. Nevertheless, I arranged to have Attorney Barraza to work out a plea of guilty with the State so that I could be released from the charge.

As noted above, Alvarez pleaded guilty with Manny Barraza as his counsel. Jicalan Sanchez (aka Jicalan Lopez) apparently absconded only to be re-arrested in 2002 on other drug charges. The record indicates that he pled guilty to those other drug charges in 2003 and received a six year sentence to be served concurrently with a federal sentence. As a part of that plea deal, the 1997 charge was dismissed because Jicalan Sanchez (aka Jicalan Lopez) was "convicted in another cause." Manny Barraza was his counsel of record at the 2003 plea.

Unfortunately for Alvarez, who is a resident alien, the federal government considers his deferred adjudication to be a conviction for the purposes of removal. *State v. Guerrero*, 400 S.W.3d 576, 588 (Tex.Crim.App. 2013)(state based deferred adjudications are still considered final convictions under federal immigration scheme). Consequently, Alvarez sought to undo his earlier guilty plea.

### PROCEDURAL SUMMARY

Alvarez filed his Application for Writ of Habeas Corpus on July 27, 2012. The Application raised two issues. First, Alvarez contended that his plea counsel did not properly advise him on the immigration aspects of the guilty plea, which we refer to as the *Padilla* ground. His second argument contends that his plea counsel, Manny Barraza, had a conflict of interest in that he represented two clients with divergent interests. We refer to this as the *Cuyler v. Sullivan*[2] or conflict of interest ground.

---

[2] 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Under *Cuyler*, a defendant can establish a violation of his Sixth Amendment right to the effective assistance of counsel if he can show "that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 350, 100 S.Ct. at 1719.

The trial court held a hearing on the Application on December 17, 2012. Habeas counsel offered an affidavit from Alvarez, the affidavit of his co-defendant Jicalan Sanchez (aka Jicalan Lopez), and offered testimony from Alvarez' wife, Anabel Alvarez.[3] Manny Barraza did not testify, in person or by affidavit.[4]

The trial court later granted the Application, vacating the 1997 guilty plea. The court issued eight Findings of Fact and two Conclusions of Law. The findings germane to the *Padilla* claim include:

Findings of Fact

.    .    .

6. Attorney Barraza did not advise Alvarez of the immigration consequences of his guilty plea prior to June 9, 1997, the date Alvarez pled guilty. Specifically, Alvarez was never advised that a plea of guilty to the offense of possession of more than 4 but less than 200 grams would subject him to deportation or removal from the United States.

Conclusions of Law

.    .    .

2. Applicant Alvarez was deprived of effective assistance by Attorney Barraza's failure to inform Alvarez of the immigration consequences of his guilty plea to the cocaine possession charge.

The findings germane to Alvarez' *Cuyler v. Sullivan* conflict of interest claim include these:

Findings of Fact

.    .    .

4. Shortly after Alvarez' arrest, the person then-known as Julian Jicalan Lopez retained Attorney Manuel Barraza to represent both Daniel Alvarez and himself

---

[3] Counsel represented that Daniel Alvarez was confined at an "immigration camp" as of the date of the hearing.

[4] We take notice that attorney Manny Barraza was convicted on June 1, 2010 of two counts of wire fraud, deprivation of honest services, making false statements, and he had been sentenced to five years in a federal prison. *See* 75 TEX.B.J. 480-81 (June 2012). On April 23, 2012 he was disbarred. *Id*.

5

by paying Barraza $15,000.00 for his representation and $5,000.00 to represent Alvarez. The terms of this agreement were that Barraza would seek to obtain a probation sentence for Alvarez on the cocaine possession charge and secure a dismissal for Julian Jicalan Lopez on the same charge.

.    .    .

7. The Court finds that Attorney Manuel Barraza labored under an actual conflict of interest by representing both Alvarez and Sanchez in connection with the pending cocaine possession charge.

8. The Court finds that Attorney Barraza's dual representation of Alvarez and Sanchez had an adverse effect on specific instances of counsel's representation.

Under the heading "Conclusions of Law" appears a typewritten finding that "Applicant Daniel Alvarez was deprived of effective assistance of counsel by reason of Attorney Manuel Barraza's dual representation of both Alvarez and Sanchez on the same cocaine possession charge." There is a handwritten mark, which appears to be a strike-out, through this Conclusion of Law.

In response to a motion filed by the State, we issued an order directing the trial court to clarify what Findings of Fact and Conclusions of Law he relied upon to grant habeas corpus relief. In reply, the trial court issued a new set of findings on May 31, 2013 that are limited to only those original findings germane to the *Padilla* claim. The trial judge did not include *any* of his original findings, as set out above, which pertained to the *Cuyler v. Sullivan* conflict of interest claim.

The State appeals and raises two issues. In Issue One, the State argues that *Padilla* cannot be applied retroactively. In Issue Two, the State argues that even if the rule applied retroactively, Alvarez failed to show any prejudice.

**STANDARD OF REVIEW**

As the applicant for the Writ of Habeas Corpus, Alvarez was obliged to prove his allegations by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664

6

(Tex.Crim.App. 2006). In reviewing the trial court's decision to grant or deny relief on the Application, we review the facts in the light most favorable to the trial court's ruling and uphold it absent an abuse of discretion. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex.Crim.App. 2003). Reviewing courts should afford almost total deference to a trial judge's determination of the historical facts supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d at 819 n.67. When dealing with mixed questions of law and fact, we give the same level of deference if the resolution of those questions turn on an evaluation of credibility and demeanor, and review *de novo* those mixed questions of law and fact that do not depend upon credibility and demeanor. *Id*. at 819.

The reviewing court should affirm as long as the decision is correct on any theory of law applicable to the case. *Ex parte Primrose*, 950 S.W.2d 775, 778 (Tex.App.--Fort Worth 1997, pet. ref'd); *see, e.g., Devoe v. State*, 354 S.W.3d 457, 469 (Tex.Crim.App. 2011)(stating that appellate court will not disturb trial court's evidentiary ruling if ruling is correct on any theory of law applicable to ruling, even if trial court gave wrong reason for correct ruling); *Mahaffey v. State*, 316 S.W.3d 633, 637 (Tex.Crim.App. 2010)(holding that State could permissibly make new argument in support of trial court's ruling for first time on appeal because "an appellate court will uphold the trial court's ruling if that ruling is 'reasonably supported by the record and is correct on any theory of law applicable to the case'") *quoting State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006).

### *PADILLA* ISSUE

Alvarez asserted below that he was denied effective assistance of counsel because his attorney failed to apprise him of the immigration implications of his decision to plead guilty.

The Sixth Amendment to the U.S. Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment guarantees *reasonably effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063-64, 80 L.Ed.2d 674 (1984); *Monreal v. State*, 947 S.W.2d 559, 564 (Tex.Crim.App. 1997). To prove his plea was involuntary because of ineffective assistance, Alvarez must show (1) counsel's representation/advice fell below an objective standard and (2) this deficient performance prejudiced the defense by causing him to give up his right to a trial. *See Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex.Crim.App. 1997).

In reviewing an ineffective assistance of counsel claim, we follow the United States Supreme Court's two-pronged test in *Strickland*. *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex.Crim.App. 1986). Under the *Strickland* test, an applicant must show that counsel's performance was "deficient," and that the "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App. 2000).

In the context of Alvarez' claim, the Supreme Court has held that the Sixth Amendment requires a criminal defense attorney to inform his client of the risk of automatic deportation as a result of his guilty plea. *Padilla v. Kentucky*, 559 U.S. 356, 368-69, 130 S.Ct. 1473, 1483, L.Ed.2d 284 (2010); *State v. Guerrero*, 400 S.W.3d 576, 587 (Tex.Crim.App. 2013). The *Padilla* decision issued on March 31, 2010. *Padilla*, 559 U.S. at 356, 130 S.Ct. at 1473. When Alvarez's application was originally heard by the trial court, it was an open question as to whether *Padilla* applied retroactively to those cases where the plea was taken before *Padilla* was handed down. A decision of this Court had held *Padilla* should be applied retroactively. *Ex*

8

*parte De Los Reyes*, 350 S.W.3d 723, 729 (Tex.App.--El Paso 2011), *rev'd*, 392 S.W.3d 675 (Tex.Crim.App. 2013). But soon thereafter, the retroactivity issue was resolved against Alvarez, both by the United States Supreme Court and the Texas Court of Criminal Appeals. *Chaidez v. United States*, ___ U.S. ___, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013); *Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex.Crim.App. 2013).

The Texas Court of Criminal Appeals has further clarified that while normally an order of deferred adjudication is not considered a final conviction for state law, it is for the purposes of federal immigration law. *State v. Guerrero*, 400 S.W.3d at 587-88. For purposes of a *Padilla* analysis, a final conviction occurs at the time a defendant pleaded guilty and was placed on deferred adjudication. *Id*. Thus, if an Applicant made their plea before March 31, 2010 when *Padilla* was handed down, the failure of trial counsel or the trial judge to inform a defendant of the deportation consequences of the guilty plea does not entitle the defendant to habeas corpus relief. *Guerrero*, 400 S.W.3d at 588.

In this case, it is undisputed that Alvarez's guilty plea, and even his completed term of deferred adjudication, occurred long before *Padilla* was decided. The trial court would have abused its discretion in not applying pre-*Padilla* law. *See Ex parte Sudhakar*, 406 S.W.3d 699, 702 (Tex.App.--Houston [14th Dist.] 2013, pet. ref'd). Under that law, the Sixth Amendment right to counsel does not extend to "collateral" consequences of a prosecution. *Ex parte Morrow*, 952 S.W.2d at 536. Deportation is a collateral consequence of a prosecution. *Hernandez v. State*, 986 S.W.2d 817, 821 (Tex.App.--Austin 1999, pet. ref'd), *citing State v. Jimenez*, 987 S.W.2d 886, 888-89 (Tex.Crim.App. 1999). Consequently, Alvarez' plea was not deficient because of any failure of his trial counsel to warn him about the immigration consequences of his plea. *See Ex parte Sudhakar*, 406 S.W.3d at 702.

9

Alvarez' sole response to this seismic shift in the case law against him is to argue that the State waived the point. He contends that by failing to obtain an explicit ruling from the trial judge on the retroactivity issue, the State cannot raise it now. We disagree.

Generally to preserve error a the party must "let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 908-09 (Tex.Crim.App. 1992); TEX.R.APP.P. 33.1. The record in this case is clear that the State raised the question of retroactivity below. The State devoted fifteen pages of its response to the Application outlining the retroactivity issue, including alerting the trial court that the U.S. Supreme Court had accepted the petition for certiorari in *Chaidez*, and that the Texas Court of Criminal Appeals had granted the petition for discretionary review in *De Los Reyes*. At the hearing on the Application, the State restated its position that it did not believe that *Padilla* should be applied retroactively, but conceded that the trial court might be bound by this Court's opinion in *De Los Reyes*. When the trial court granted the Application, it necessarily overruled the State's retroactivity arguments. We find no waiver on this record.

**CONFLICT OF INTEREST ISSUE**

In his brief, Alvarez appears to argue that the trial court's ruling can alternatively be upheld on his *Cuyler v. Sullivan* conflict of interest ground that was originally raised in his Application, but not accepted by the trial court. Alvarez contends that he obtained sufficient findings of fact to allow this Court to sustain the writ on that alternate ground. The State did not favor us with a reply brief to respond to this contention.

While most ineffective assistance of counsel claims are resolved applying the *Strickland* test, when the underlying failing of trial counsel involves a conflict of interest, a different

10

analysis applies. Conflict of interest claims for which no objection was timely made at the original trial or plea are analyzed under *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *Acosta v. State*, 233 S.W.3d 349, 356 (Tex.Crim.App. 2007); *James v. State*, 763 S.W.2d 776, 778-79 (Tex.Crim.App. 1989). The *Cuyler* analysis has two elements. The applicant must demonstrate that (1) defense counsel was burdened by an actual conflict of interest; and (2) the conflict had an adverse effect on specific instances of counsel's performance. *Ex parte McFarland*, 163 S.W.3d 743, 759 n.52 (Tex.Crim.App. 2005); *Pina v. State*, 29 S.W.3d 315, 317 (Tex.App.--El Paso 2000, pet. ref'd).

Joint representation does not automatically create an actual conflict of interest. *See Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)(explaining that joint representation is not per se ineffective assistance); *James*, 763 S.W.2d at 778 (same). An actual conflict of interest exists when "one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing." *James*, 763 S.W.2d at 779. However, the failure to emphasize the culpability of one defendant over the other does not create an actual conflict. *Kegler v. State*, 16 S.W.3d 908, 913 (Tex.App.--Houston [14th Dist.] 2000, pet. ref'd); *Howard v. State*, 966 S.W.2d 821, 827 (Tex.App.--Austin 1998, pet. ref'd).

To meet the second *Cuyler* test--showing an adverse effect--an Applicant must demonstrate that some plausible defense strategy or tactic might have been pursued, but was not, because of the conflict of interest. *Ramirez v. State*, 13 S.W.3d 482, 487 (Tex.App.--Corpus Christi 2000), *pet. dism'd, improvidently granted*, 67 S.W.3d 177 (Tex.Crim.App. 2001). If the Applicant shows both elements, then prejudice is presumed. *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052; *Mitchell v. State*, 989 S.W.2d 747, 748 (Tex.Crim.App. 1999).

11

Our first hurdle in analyzing this claim is that the trial court, while agreeing with some of the predicates of the argument, rejected its conclusion. The trial judge originally made findings that Manny Barraza labored under an actual conflict of interest that had "an adverse effect on specific instances of counsel's representation." But the trial court affirmatively struck through a proposed finding that the conflict denied Alvarez effective assistance of counsel. In response to this Court's order, the trial court clearly indicated the conflict of interest findings did not inform his decision to grant the writ.[5]

Even if the earlier findings of fact were meant to survive the newer issued findings, we would be inclined to view them as insufficient to sustain a *Cuyler* type challenge. To be sure, there is some evidence of the existence of a true conflict of interest presented on the record. The allegation that attorney Manny Barraza accepted the representation of two persons with the intent to plead one to the detriment of the other is precisely the type of conflict alluded in *Dukes v. Warden,* 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972). In *Dukes,* one of several co-defendants represented by the same firm of attorneys complained that his guilty plea was tainted by a conflict of interest. He had learned that his attorney when pleading out the co-defendants had tried to gain leniency for the other defendants by suggesting that he was the more culpable defendant. *Id.,* 406 U.S. at 254, 92 S.Ct. at 1554. The court rejected the claim, but specifically referenced a finding of the lower court that there was no evidence that the attorney "induced [Dukes] to plead guilty in furtherance of a plan to obtain more favorable consideration from the court for other clients." *Id.,* 406 U.S. at 257, 92 S.Ct. at 1554; *James,* 763 S.W.2d at 784

---

[5] We note that the trial judge signed the order with the new Findings of Fact and Conclusions of Law on May 31, 2013 which was after the United States Supreme Court decided *Chaidez* and the Texas Court of Criminal Appeals decided *De Los Reyes,* ending the retroactivity debate in Texas, and thus effectively undermining the only rationale for his decision. Had the trial court had any belief that the conflict of interest issue had merit, we would have thought he would have included it in his findings at that time.

12

(Clinton, J., concurring)(noting this distinction drawn in *Dukes*). There is, however, some evidence on this record of a plan to favor one defendant over the other.

But in looking at this record, we are not directed to any evidence supporting the second *Cuylar* predicate that the conflict had an adverse effect on *specific instances* of attorney Barraza's conduct. "An appellant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action, such as 'eliciting (or failing to elicit) evidence helpful to one [interest] but harmful to the other.'" *Gaston v. State*, 136 S.W.3d 315, 318 (Tex.App.--Houston [1st Dist.] 2004, pet. struck)(en banc), *quoting Ramirez v. State*, 13 S.W.3d 482, 488 (Tex.App.--Corpus Christi 2000, pet. dism'd). The trial court's original findings contain the relevant language from *Cuyler*, but offer no clue as to what specific instances of conduct were adversely affected. *See Ex parte Flores*, 387 S.W.3d 626, 634 (Tex.Crim.App. 2012)(a trial court's findings of fact and conclusions of law should do more than more than restate the parties' arguments). The only conduct of attorney Barraza reflected by the evidence in the record was the plea bargain itself. There is no evidence of how the terms of the plea was reached, such the negotiations behind the plea. There is no evidence that he took any specific action to use the terms of Alvarez' plea to gain some particular concession for Jicalan Sanchez (aka Jicalan Lopez). There is no evidence of the investigation that Barraza may or may not have undertaken to develop a defense, particularly as to the cocaine found in his house and on his person. We acknowledge that the indictment and plea occurred almost fifteen years before the Application was filed, but Alvarez still bore the burden to present some evidence of each element of his claims.[6]

---

[6] We note that the Texas Court of Criminal Appeals has recently referenced the consequence of the potential loss of evidence when habeas applications involve pleas and convictions occurring many years in the past. *Ex parte Smith*, 444 S.W.3d 661, 666 (Tex.Crim.App. 2014). The court has now specifically authorized habeas courts to *sua sponte* raise the issue of laches, looking in part to the prejudice occasioned by reconstructing events long past. *Ex parte*

13

In the cases where a conflict of interest was found, the courts could identify in the record specific instances of attorney conduct affected by the conflict. *Holloway*, 435 U.S. at 480, 98 S.Ct. at 1176 (counsel unable to ask one co-defendant questions on the stand due to confidential information imparted from co-defendant); *Ex parte Acosta*, 672 S.W.2d 470, 473-74 (Tex.Crim.App. 1984)(decision to have defendant testify); *Ex parte McCormick*, 645 S.W.2d 801, 804 (Tex.Crim.App. 1983)(decision to oppose separate trials and use of confessions); *Ex parte Parham*, 611 S.W.2d 103, 105 (Tex.Crim.App. 1981)(advice given to one defendant about testifying); *James*, 763 S.W.2d at 778 ("In each of these cases the potential for conflict inherent in multiple representation became an actual conflict due to the inculpatory or exculpatory nature of testimony or the strategy adopted by defense counsel in the particular case. That is not reflected in the case before us today."). We simply find none of these types of specific actions developed in the record that would support the second *Cuyler* finding, even under our highly deferential standard of review.

And while we recognize that a conflict of interest may implicate not only what an attorney does, but what he fails to do, *Holloway*, 435 U.S. at 489-90, 98 S.Ct. at 1181, we do not find any specifics of Barraza's conduct, other than attending a plea hearing in this record. Nothing suggests there was any other viable defense strategy that he could have pursued, or action that he could have taken on Alvarez' behalf.[7]

---

*Bowman*, NO. PD-1375-14, ___ S.W.3d ___, 2014 WL 6464635 (Tex.Crim.App. Nov. 19, 2014); *Ex parte Smith*, 444 S.W.3d at 667.

[7] His habeas counsel argued at the hearing that Alvarez could have placed all the blame on Jicalan Sanchez (aka Jicalan Lopez) for the cocaine in the car, or his wife for the cocaine in his house, but habeas counsel's argument is not evidence. *Guerrero*, 400 S.W.3d at 586 (habeas counsel's statements not evidence and would not support findings).

We sustain Issue One and find Issue Two to be moot. The trial court's judgment is reversed and judgment is rendered denying the Application for Writ of Habeas Corpus. TEX.R.APP.P. 43.2(c).

January 28, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § | |
|---|---|---|
|  |  | No. 08-13-00025-CR |
|  | § | |
|  |  | Appeal from |
| EX PARTE:  DANIEL ALVAREZ | § | |
|  |  | 384th District Court |
|  | § | |
|  |  | of El Paso County, Texas |
|  | § | |
|  |  | (TC # 960D10169-384-1) |
|  | § | |

## J U D G M E N T

The Court has considered this cause on the record and concludes that there was error in the judgment.  We therefore reverse the judgment of the court below and render judgment denying the Application for Writ of Habeas Corpus, in accordance with the opinion of this Court, and that this decision be certified below for observance.

IT IS SO ORDERED THIS 28TH DAY OF JANUARY, 2015.

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

## 2. Information

| D.A. CONTROL #12-10345 | PID: 1757605 | NCIC: 13990001 |
|---|---|---|

INFORMATION *20100C 10835*

*CC7*

OFFENSE: ASSAULT CAUSES BODILY INJ

## STATE OF TEXAS
## VS.
## VANDA VIGIL

D.O.B.: 07/10/68
WARRANT: M12W7593
AGENCY: EL PASO POLICE

ADDRESS: **210 WEST REDD RD 708**
**EL PASO, TX 79932**

( ) CAPIAS REQUESTED

### IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS

I, KENNETH GIBSON , ASSISTANT DISTRICT ATTORNEY IN AND FOR THE COUNTY OF EL PASO, STATE OF TEXAS, PRESENT TO THE COUNTY COURT AT LAW NO. 1 OF EL PASO COUNTY, TEXAS, IN AND FOR SAID COUNTY, AT ITS JULY TERM, A.D. 2012, THAT ON OR ABOUT THE 17TH DAY OF AUGUST, 2012 AND BEFORE THE FILING OF THIS INFORMATION IN SAID COUNTY OF EL PASO, STATE OF TEXAS, VANDA VIGIL, HEREINAFTER REFERRED TO AS DEFENDANT,

PARAGRAPH A
DID THEN AND THERE INTENTIONALLY, KNOWINGLY OR RECKLESSLY CAUSE BODILY INJURY TO ELIZABETH JIMENEZ BY PULLING ELIZABETH JIMINEZ'S HAIR WITH THE DEFENDANT'S HAND,

PARAGRAPH B
DID THEN AND THERE INTENTIONALLY, KNOWINGLY OR RECKLESSLY CAUSE BODILY INJURY TO ELIZABETH JIMENEZ BY GRABBING OR SQUEEZING ELIZABETH JIMINEZ'S BREAST WITH THE DEFENDANT'S HAND,

PARAGRAPH C
DID THEN AND THERE INTENTIONALLY, KNOWINGLY OR RECKLESSLY CAUSE BODILYINJURY TO ELIZABETH JIMENEZ BY PUSHING OR THROWING ELIZABETH JIMENEZ TO THE GROUND,

PARAGRAPH D
DID THEN AND THERE INTENTIONALLY, KNOWINGLYOR RECKLESSLY CAUSE BODILY INJURY TO ELIZABETH JIMENEZ BY STRIKING ELIZABETH JIMENEZ ABOUT THE HEAD WITH THE DEFENDANT'S HAND,

AGAINST THE PEACE AND DIGNITY OF THE STATE.

ASSISTANT DISTRICT ATTORNEY
FOR EL PASO COUNTY,
STATE OF TEXAS

FILED IN THE COUNTY COURT AT LAW NO. 1 OF EL PASO COUNTY, TEXAS
ON _10/10/2012_ AT _12:20_ O'CLOCK, _P_ M.

DEPUTY COUNTY CLERK
EL PASO COUNTY, TEXAS

SQ